The next case on the calendar is McNeil v. Colvin. Good morning, Your Honors. May it please the Court, my name is Farrah Tabatabai from Hughes, Hubbard & Reed, representing Plaintiff Appellant Sharon McNeil on behalf of her twin children. This case is about whether this Court should deprive two 9-year-old children from Social Security benefits from their biological father by reading into the New York Intestacy Statute language that simply isn't there. In order to do that, this Court would have to find that the New York Intestacy Statute contains an implied, unwritten bar that prohibits the McNeil twins from inheriting from their If your argument is accepted. Yes, Your Honor. Section 4-1.1c is the section that provides That's the one that provides that if you're conceived before the decedent's death but born after, you can recover as if you were born during. Yes, Your Honor. And that's the provision that the ALJ erroneously relied on here. This argument about whether they relied on it or not, that provision is in the record. How does it survive if your argument is accepted? Because your argument is basically that whenever the conception occurs, there needs to be inheritance, assuming paternity. Yes, that's correct because of the section 4-1.2. Now, section 4-1.1c is simply meant to clarify the scope of section 4-1.2 or the intestacy statute generally. And this idea But your argument would, it wouldn't be necessary if one were to accept your argument, right? Well, the statutory canon that urges the court to read a statute so as not to make any language superfluous is aimed at defining what the intent of that language must have been. And there is no possibility that the language in section 4-1.1c was intended to exclude posthumously conceived children. It's only an intent to clarify what the scope of the statute is to include children You haven't answered my question though as to why it would be necessary at all, why that clarification is necessary. You've offered a clarification. Whenever conception occurs, inheritance follows. And so that provision is just surplusage. Again, your honor, I think the critical point here What work does it do? What work does that provision do if we accept your position? Right, the work that that provision does is to make sure that children who are born in unusual circumstances are nevertheless covered, that there's no ambiguity here about who's covered by the statute. And at the time that language Your position was that there was no ambiguity based on the 4.1.1 generally in 4.1.2c. That's correct. But if you're looking at what the legislature must have intended at the time, this is simply to ensure that all possible categories of children here are covered. Another way of looking at this, at the time this statute was written, there was no conception after death. So they were looking at inheritance being for people who were conceived and born before the decedent died, and then they created an exception to that if their conception was prior to the decedent's death, but the birth was afterwards. The whole context of the statute would be in the earlier, in the context of, you know, pre-in-vitro fertilization, you know, as a way of doing this. That's correct, and that's a critical point about what the statute must have meant and what it must have intended there. Because the language of section 4-1.1c predates any in-vitro fertilization. There can't have possibly been an intent on the part of the legislature to carve out an exception for after-born children. Well, no, it wouldn't necessarily be carving out, but wouldn't the legislature be acting against a background assumption that without special legislation, only children who were already born would inherit? That the heirs are determined as of the date of the death. If there is nobody alive at the date of the death in a particular category, they don't inherit. And the legislature said, oh no, we're going to make an exception to that for children who are already in utero at the time of death and are then born after the date of the intestate person's death. Well, if you look at the intent there, Your Honor, it's clearly to provide these benefits or the benefits of intestate inheritance to the largest possible category of biological heirs. Well, why would you say that? I mean, they dealt with what existed at the time. Here's a problem. These children would not inherit otherwise. So we adopt a statute to say now they do inherit. They don't conceive, no pun intended, of any other possibilities that may exist. They're dealing with the one they've got and changing the background law to deal with that situation. That's quite different than the legislature thinking, you know what, everybody who comes from the sperm of the decedent should get to inherit and we're going to somehow anticipate the possibility of even a posthumously conceived child. And if that ever happens, we're trying to get the broadest coverage possible. They're just dealing with what they've got against a background of law that was negative to inheritance by anybody who wasn't alive at the time of death. Well, I think the purpose of this language is to ensure the greatest possible inclusion because as Your Honor said, this is the entire universe of children who were conceivably, who could conceivably exist at the time. So then what do you do with the 2014 statute? Was that intended to cut back on this policy of having the broadest possible coverage and only cover children who are conceived within, whatever it is, conceived within 24 months, born within 33 months of death? So that wasn't a liberalization. That was actually cutting back on the rights of people like the McNeil twins. Well, again, if you... Perspectively. I mean, I understand it doesn't apply to this case. But I thought the legislature thought it was liberalizing, not that it was restricting the current state of the law. Well, Your Honor, if you look at the sponsor's memorandum for that, which we cited in our papers, what's clear from that is that while, you know, individual members of the legislature may have disagreed about what the law is, they refer to an ambiguity in the law, that the law is not clear. And so what they did with that 2014 amendment is to clarify the scope of posthumously conceived children's inheritance rights. It's not necessarily to narrow, restrict, expand. It was to clarify what they described as an ambiguity in the law. But doesn't it have the effect of cutting back on what you contend was the law before it was adopted? It would, Your Honor, because the statute... In other words, if this same situation of your clients arose today, the children would not inherit. That's correct, Your Honor, because now there is this amendment in the law. And as you pointed out, that doesn't apply to the McNeil children. And when the statute, as it was when the McNeil children applied for this benefit, and it's a 2010 statute that now applies, does not have this restriction. That language is clear. One last question for me, anyway. If this was an ambiguity, doesn't that tell us what the answer for us is, which is to punt it over to the New York Court of Appeals? Because this is a fairly significant issue, I would think, to the State of New York, which has, you know, maybe it's a mistake by Congress, now that we've got these more complicated scenarios, to defer to state intestate succession law. I mean, I could see reasons why the state would want to not allow intestate succession, where children are conceived 11 years after the estate is closed, that would not have anything to do with the Social Security law. But for good or ill, Congress says this is a matter of state law, and I would think it's a fairly significant question of state law, whether the law is and always has been, as you suggest, or was until 2014, as you suggest. Right. And, Your Honor, you know, we do believe that the statute is clear on its face. Section 4-1.2 says what it says. But in the alternative, if the court believes that there's an ambiguity there that needs to be resolved, we would suggest that the court certify the question to the Court of Appeals of New York. And the question retains its significance for purposes of certification, even though the new 4-1.3 answers the question for the future pretty clearly, but you say this ambiguity should be resolved by the New York Court of Appeals for cases predating the amendment. Yes, that's right. Obviously this issue is resolved, this specific issue is resolved by the November 2014 amendment, that there are cases of estates that predate that amendment, where this would be an important question of public policy for the New York courts to resolve, and there is no controlling precedent on that. Do we have any idea how many such cases might exist, that is to say, where there are still open estates from pre-2014 and still frozen sperm around, except that, well, or not that there are still frozen sperm around, because that case would probably be governed by the 2014 statute, but cases where there's still some litigation in New York State? I apologize, Your Honor. I don't have any idea how many cases like that there would be or might arise in the future. You would think it would be a small number. I imagine it would be a small number. I imagine it would be a small number. But again, this is an issue that is of public policy importance to New York. It's not settled by any existing case, and we do believe, if the court does not believe that the statute is clear on its face, that it should certify the question. Thank you. Thank you. Good morning. May it please the Court, my name is Sandra Grossfeld. I represent the Social Security Administration. You might just pull the microphone down a little bit. I think we'll be able to hear better then. I can speak up. It's better. This case involves the application of two children to obtain survivor insurance benefits under Section 216 of the Social Security Act. The children were born over a decade after the decedent's death in 1996. Under Section 216H2, for a child to obtain these benefits, he must show relationship and dependency upon the insured when he died. There's no dispute that under the statute, the federal statute, it looks towards the New York State Statute Article 4 to determine what the law is. Whatever the intestacy law is, if the children can inherit under that law, then they can get benefits. Now, looking at Article 4 of the EPTL, the States Powers and Trusts Law, the statute is written in a way so that in Section 4-11, in the very beginning of the statute, it says, It's the general rule, and it says, Therefore, on the face of it, Section 4-11C cannot be just ignored or limited in some tortuous way that doesn't comport with the plain meaning of the statute. It provides that distributees of the decedent conceived before his or her death but born alive thereafter take as if they were born in his or her lifetime. So it does provide an exception for those conceived before the decedent's death, and it draws a distinction for those who are not conceived before the decedent's death. The children in this case fall into the latter part because they simply do not meet the criteria of Section 4-11C. The legislature at the time clearly was not drawing that distinction because there were no such people as children who were conceived after the death of their father. There may not have been, and there may be countless permutations ahead of us in science where there are things that haven't been thought of, however. But the legislature did either then or subsequently think of a different category of people and adopted 4-1.2, which permits non-marital children to inherit if paternity has been established by clear and convincing evidence. Are these children not a somewhat peculiar or unusual species of non-marital children? I mean, it seems odd to refer to them as non-marital children when their parents were married at one time and wanted to conceive these children while they were married. But the marriage ends with the death. Yes, the marriage ends with the death. However, 4-1-1 and 4-1-2 have to be harmonized. They can't just be read in isolation. They're part of the same statutory scheme. So in order to read it as the appellant is reading it, 4-1-1c doesn't have any purpose, which goes against basic rules of statutory interpretation. Whether or not the people who promulgated 4-1-1c or enacted 4-1-1c were thinking about Well, was 4-1.2 in existence at the time that 4-1.1c was adopted? I don't know the exact date of the promulgation of 4-1.1c. However, I believe that 4-1.2 was a later enactment because So perhaps it renders 4-1.1c irrelevant. It doesn't repeal it. It just renders it irrelevant by broadening the category because, of course, before 4-1.2 is adopted, lots of people don't get to inherit principally illegitimate children. Now the legislature adopts a new rule that clearly broadens the inheritance rights of non-marital children. The 4-1.2, from what I know of the promulgation dates, there used to be just one method or an order of affiliation done during the parent's lifetime. The remaining categories, such as the blood test and in particular the 2010 enactments that we're looking at here, do in fact provide more ways for a child to inherit provided that he or she meets the criteria of 4-1-1. There has never been any move by the legislature to repeal or undo or disregard the rule that the distributees have to be conceived before the death of the testator, I'm sorry, the decedent, but born alive thereafter. So that is an exception. And Your Honor is correct that, in addition, another exception was drawn in 2014 when 4-1.3 was enacted. 4-1.3 provided another exception and it, you know, I don't really think that it's an ambiguity because the statute says on the face of it, notwithstanding Section 4-1-1-C, posthumously conceived children could inherit under certain circumstances. So that view of the statute and of 4-1-1-C has been taken by the district court in Bosco, by the state court in Maine-Martin B. It's noted in the Capado Supreme Court case, which dealt with Florida law but had a very similar statute and even references in the footnote that New York has the same statute. So there really is no basis for 4-1-1-C to just be ignored. I think that the ALJ, the district court, and the judge in Martin, which was a state case, basically said that under these circumstances, 4-1-1-C does act as a bar. And I would also like to address the argument that 4-1-3-2 actually narrows some kind of previously out-there-forever kind of inheritance law. The decedent's death fixes the inheritance. And that is longstanding law. There were a couple of cases in the early 1980s when the EPTO was broadened, as I just talked about. And in those cases, there were a couple of cases where the court struggled to try to read in a retroactive reading of that one particular statute. However, in this case, the only relevant statute would be 4-1.3. And under that statute, there's a very narrow exception. You can see from the plain language of the statute that the child must be conceived within 24 months of the decedent's death. It has to be born within 33 months. In this case, the children are conceived and born over a decade after the decedent's death. There is no basis for... All of these laws would be rendered superfluous if it could be said that the statutes just allow anyone to keep an estate open for as long as they want, which is basically the argument. Let me understand that argument as a matter of state intestacy law. Is there any rationale under the Social Security law for why these children should not be permitted to inherit while, if they had been born 8 or 9 years earlier, they should be allowed to receive Social Security benefits, where they would have been allowed, or at least they would be today allowed, if they were born 8 years earlier? Well, yes. As the Supreme Court recognized, the purpose of the survivor's benefits was to replace lost income by a wage earner. In other words, children who were receiving income from their parent or care, purchased with money by their parent, were able to fix that loss by getting survivor's benefits. And it's called survivor's benefits because the children were thought of as surviving. Mrs McNeill... If a present-day Mrs McNeill, someone exactly similarly situated to her, having exactly the same situation of her deceased husband, wins the lottery one year and 11 months after her husband's death and now has plenty of money and says, thank goodness, now I can afford to conceive, bear and raise these children. She does. They get Social Security benefits from his account. But someone who is just like Mrs McNeill, really, and doesn't hit the lottery and has to work for a number of years before she can afford to bear children, doesn't get Social Security benefits. That's the outcome here, right? Well, not exactly, because under the scenario here, the factual situation here, over a decade went by before the conception and birth of these children. However, so that under these circumstances, if this at all happened after the passage of the 2014 statute, they would not be able to inherit. That's what I'm saying. But if the same woman had hit the lottery at one year and a half after her husband's death and then manages to be able to afford to raise the children, those children would get benefits today. But not under the Social Security Act. Why wouldn't they? Because they would be children. If they're conceived soon enough, they inherit under New York State law, and they would get Social Security benefits. No, because the decedent has to, among the myriad requirements of 4-1-3, the decedent has to provide a writing. It has to be attested to by a couple of people. It has to designate someone to deal with this matter. That person has to notify the court and I think the potential distributees. I'm not quite sure of that. In other words, this was a very narrowly drawn, very careful statute that was drawn under 4-1-3. As far as the Social Security Act, again, the purpose is to replace lost income. Here there has been no lost income, but I would add that because of the state requirement under Section H-2A, where state law is utilized as a mechanism to decide, where those children can meet the state requirements, the Social Security Administration will pay. There will be some arbitrariness in terms of just because it's referred to state law and the states will differ and all these requirements. But that is the statute, right. Can I ask one last question? How much money is at stake here? I attempted to find that out, Your Honor. I don't have a figure for you. I apologize. However, the applications were filed in, I think, 2008. It would be until the children reach the age of 18, monthly times... Can I be a little clearer about what I'm asking? I understand there could be a lot of money cumulatively over the period, but in terms of a monthly benefit, are these benefits calculated according to the earnings history of the decedent? Yes. And this gentleman, unfortunately, died at age 25. Yes, he died very young. So there probably wouldn't be very much money per month. What I can do, Your Honor, is to... I'm not asking you to do the research. I just wanted to know if you... I tried, Your Honor. Okay, I understand. Thank you. So basically, in sum, this is a case where the issue has been correctly decided in the Bosco case by the magistrate judge in the district court, in this case by a magistrate judge in the district court, who were, of course, reviewing the administrative law judge's decision. It's been decided in Martin, the state court written by one of the surrogates in the... I see that in your brief on page 10, you do say that in the alternative, we could certify it. You would have no objection to our certifying? If the court feels it is necessary to certify, we would defer to the court. However, this situation is, in our view, very clear and does not need, in our view, to be certified to the court. There is basically no language within the statute that would permit the court, in our view, to rule otherwise than we've ruled. Do you have any sense of how many cases might be at stake? Well, Your Honor, there may be other cases at stake. I'm not sure of the number. However, since 2014, this was settled by statute. This could be, and again, I don't have an exact number, this could be a very small number of children and it's going to become smaller as time goes on. So, basically, the McNeil children cannot get these benefits because they can't inherit under New York law. The statutory construction, reading all the parts of the statute together, the prohibition on rendering a statute superfluous, and the plain meaning of 4-11C, which says if you're conceived prior to the death but born thereafter, you can inherit in New York state. If not, then you can't. Also, in addition to the cases that I've named, there were also a couple of attempts, which we mentioned in the brief. There's no specific language that says that there can only be inheritance in intestacy, non-marital inheritance in intestancy, if there's no limitation. In other words, the statute doesn't say there can be none except where the statute provides. It's loose on that score, right? We have to look at what we've been talking about is the background in which the legislation was passed and that nobody really qualified when the statute was passed unless they were alive when the decedent died. I mean, unless they were born before the decedent died. In that context, that explains why there was no specific language addressing the situation that you could only get it if you were born before the decedent died, and then there's this 4.11c exception. Well, the way 4.11c is looked at is this is the exception we're going to make, children who are conceived before death and born thereafter. Therefore, anyone who does not meet that exception until there's some other legislation, which there is now... In the statute, I was looking for a specific language saying you can only recover if you are born before the decedent's death, but there's no specific language that says that in those words. It's clear that that was the background in which they legislated, right? I guess the purpose was... I'm just wondering about the... That would be ironclad, it seems to me, and then there would be absolutely no basis for certifying, if that were the case. Well, to read it any other way means that until 2014, anybody could inherit at any time. No, I understand. And the states could never be settled. No, I understand what you're saying. All right. If there are any other questions? Okay, thank you. Just very briefly, Your Honors. You know, I heard the commissioner say, or counsel for the commissioner, say that there's no language in the statute that provides that there is intestate inheritance by posthumously conceived children. That's not true. Obviously, Section 4-1.2 is clear that all biological heirs... Can I ask about that? Yes. Everyone is assuming that 4.1-2, which refers to inheritance by non-marital children, covers this case. But is it so clear that children conceived and born after the death of the spouse but pursuant to an egg or sperm from that decedent are non-marital children? Because it seems to me the statute sort of treats children born and treated under 4.1.1c as marital children. Those are the children that are born posthumously but conceived during the life of the spouse. Yes, Your Honor. In general, I'm sorry, in all cases, a marriage ends at the death of the spouse. So that's why this is a section that... For those children that are born after the death of the spouse but conceived during the marriage. In the statute, I'm not... I did not find a clear answer in the statute to this question. But the statute, in a broad sense, seems to treat them as children born during the marriage, as marital children, and there's no provision that would treat them otherwise. Right, and that may be because... And I agree, Your Honor, there isn't a clear answer in the statute. I think the general rule is the marriage will end at the death of the spouse. But if you look at Section 4-1.1c, in some sense they are treating that as a marital child because the point there is to make sure that, you know, there's some establishment of paternity. If a child is conceived during the life of the decedent and then born thereafter, there's some assurance there that there's paternity established. And Section 4-1.2 is aimed at the same situation. It just expands the way that you can prove paternity. So there's no demarcation there between conceived before, conceived after. It says if you can prove paternity by clear and convincing evidence, and there's no dispute here that the McNeil twins have done that, then you inherit. How would you... We haven't talked about the obvious sort of policy difficulties with not having the estate closed shortly after death. But the intestacy statute seems to say that if the decedent is survived by a spouse and any descendants the spouse receives, this is just by way of example, $50,000 and one-half of the residue with the remainder going to the issue. But if the decedent is survived only by a spouse, everything goes to her. By your interpretation of 4.1.2, isn't that all upended? Because if there is a child conceived far into the future, how could the spouse ever have the estate closed? Right, so I suppose there's two answers to that, and one is going forward because of the November 2014 amendment that we've been talking about, that's not going to be an issue. And second, while there are cases like this... Does this tell us anything about what the legislature may have intended before this provision? I mean, would it have enacted the provision you're relying on? Would it have wanted estates to remain open and unsettled for such lengthy periods and under such a situation of uncertainty? Frankly, we don't have any evidence that I've seen in the legislative history that this was specifically contemplated by the legislature. The intent, as far as we know, was to ensure that all non-marital children, regardless of the circumstances of their birth, if they could prove paternity, could inherit. So I don't think this is something that was specifically within their contemplation. Do you know or do we know anything about how estates are actually administered? In other words, even say right today under the 2014 law, someone dies, there are frozen sperm of that person, but I don't know if the surrogates' court has any necessary way of even knowing that. The widow comes to court and says, here I am, no children, dead husband, no will, I get all the money. Does the surrogate say, wait, we have to wait for two years just in case you conceive any children with the hypothetical frozen sperm? Or does the estate close? And if it closes and then subsequently there is a child, can someone come in as best friend of that child and reopen the estate? Do we have any idea how that works? I have to admit, Your Honor, I'm not sure exactly how an estate would be administered under the November 2014 law, if that were the case, whether they're kept open for a series of years. I know that in the November 2014 amendment, there are certain requirements which may come before because in order to take under that statute, under that section of the statute, you have to have something in writing essentially bequeathing the genetic material, from the decedent essentially bequeathing the genetic material. Acknowledging the fact that there is genetic material out there that could be used. Right, and I think specifically that it should be used for this purpose. At some point the estate has to be closed and there has to be a distribution and a finality to the whole thing. So this would allow it to stay open for a while, but your scenario, as I think Judge Livingston has pointed out, would pose all sorts of problems. Forget social security benefits, what about just a body of property that's owned by the decedent and the need to distribute it and close out the estate, pay whatever taxes may be required and so forth? Right, well, Your Honor, there are certainly cases of possible misconception, as we've said. I don't know how many there are, but in general we're talking about, I think we can all agree, a small number of cases. And if there's a situation where an estate is opened much later than it's closed and there's going to be another distribution over the objection of people whose statutory rights have vested, the courts are empowered there to make decisions about how that property should be vested. There may be no money left to distribute. I mean, it may have all been distributed. Right, and in that instance... And then what? Are they going to try and reclaim it back from the people who've received those distributions? Well, I think in that instance, the court would need to look at the facts and circumstances there, but that's not what we have in front of us today, which is a situation where Mrs. McNeil was the only statutory distributee and she's the one asking for this relief. I understand that, but, you know, often the rules and the principles that we decide on should have and could have universal application and how would they play out in other scenarios is a legitimate concern, I think. We don't know. I mean, we don't know how many other people... There may be very few, but, you know... Well, there may be none anymore, but what you're suggesting, it seems to me, is that for at least some period of time, New York law should be read to have created some rather peculiar circumstances with respect to intestacy law. That in that gap period, after these forms of reproduction become possible, but before the 2014 statute, this would be the consequence under New York law, as you interpret it, right? That there was no requirement of this written living will kind of situation. I suppose people who die intestate probably haven't done that either. There would be no such requirement and there would be these possibilities of open-ended, future-created heirs. Yes, there might be a possibility of that. Again, we wouldn't know if that would arise. I think there are competing interests in the statute here. Certainly there's an interest in administering estates efficiently, but there's also an interest which is expressed in the language of the statute that all biological heirs will inherit. And in a truly absurd situation, the surrogates court and any other court is empowered to make rules or to decide how property should be distributed. And again, in this case, that's not an issue because Mrs. McNeil here is the only distributee and she's asking for this relief from the court. Unless the court has any other questions, I'll cede. Thank you so much. Very well argued. Thanks for your arguments.